## SKEEN v. EAST JORDAN IRR. CO. et al.

No. 4698.   Decided March 12, 1929.   (276 P. 170.)

*Benjamin Spence* and *Ben Johnson,* both of Salt Lake City, for appellant.

*R. J. Hogan, Fisher Harris,* and *James Ingebretsen,* all of Salt Lake City, for respondent.

ELIAS HANSEN, J.

The plaintiff brought this action against the defendant East Jordan Irrigation Company, a corporation, and A. R. Gardner, its secretary, for possession of a certificate for twenty-eight shares of stock in the East Jordan Irrigation Company, or, if the stock could not be delivered, then for the sum of $1,500, the value thereof. The East Jordan Irrigation Company is a Utah corporation, engaged in regulating, controlling, and distributing irrigation water to its stockholders.

After the action was begun, the defendants filed an affidavit in the cause alleging that the defendants have in their possession the certificate of stock claimed by the plaintiff; that the Utah Savings & Trust Company, a corporation, claims to be the owner of the stock which plaintiff sought to recover in the action. The defendants asked that the Utah Savings & Trust Company be made the defendant in the action, and that, upon surrender of the certificate of stock to the clerk of court, the East Jordan Irrigation Company and A. R. Gardner be discharged from all liability on account of the stock certificate. Upon stipulation of counsel for the various parties, the Utah Savings & Trust Company, a corporation, was made the party defendant in the action, and the East Jordan Irrigation Company and A. R. Gardner were discharged as parties defendants. The Utah Savings & Trust Company answered plaintiff's complaint. It denied that plaintiff was the owner or entitled to possession of the stock certificate, and alleged that it was the owner of the stock certificate.

Upon issues joined by the complaint of the plaintiff and the answer of the substituted defendant, a trial was had.

The stock certificate in dispute was awarded to the Utah Savings & Trust Company. The plaintiff appeals.

Four of plaintiff's assignments of error are founded upon alleged error in the admission of evidence. These assignments are not argued, and they are without merit. The only assignments of error argued are those wherein it is claimed by plaintiff that the evidence does not support the findings of fact, conclusions of law, and judgment.

Both plaintiff and the substituted defendant claim title to the stock certificate through A. J. Nielson. Prior to 1912, A. J. Nielson, who was then the owner of the stock certificate involved in this controversy, pledged such stock certificate to the Utah State National Bank as security for the payment of an indebtedness which Nielson owed the bank. The stock certificate has printed on the back thereof this provision:

"For value received ————— hereby sell, assign and transfer unto ————— shares of the Capital Stock represented by the within Certificate, and do hereby irrevocably constitute and appoint ————— to transfer the said stock on the books of the within named Corporation with full power of substitution in the premises."

Nielson subscribed the foregoing provision when he delivered the certificate to the Utah State National Bank. The certificate remained at the Utah State National Bank, and in the possession of either the bank or Charles S. Burton, until about August 2, 1922, when Charles S. Burton, an officer of the Utah State National Bank, sent it through the mail to the substituted defendant. During a part of the time that the certificate remained at the Utah State National Bank it was held as security for the payment of money owing the bank by Nielson, but during a part of the time it was merely held at the bank for safe-keeping. Inclosed with the certificate of stock, when it was received by the substituted defendant, was a printed instrument in words and figures following:

"Salt Lake City; Utah, *June 30/22.*

"I have this day deposited with the Utah *Savings & Trust Co.*, of Salt Lake City, Utah, to secure the payment of any and all sums advanced to me or that may hereafter be advanced to me by said bank, or the holder hereof, and for the payment of any and all claims, demands or other indebtedness, now due or to become due, now or hereafter contracted or incurred, that the said bank or holder hereof, from time to time, may have or hold against the undersigned, or either of them, whether as maker, endorser, surety, partner or otherwise, and whether contracted directly with or purchased by the holder hereof *28 shares cap stock East Jordan Irrigation Co. Ctf.* $\left(\frac{shares}{28}\right)$ *No. 1132-C* with authority to sell the same, or any part thereof, or any other securities that may be deposited in lieu thereof, or in addition thereto, or so much thereof as may be necessary, at public or private sale, and with or without notice at the maturity of any of said claims or indebtedness, or any thime thereafter, free from the right of redemption, which right is hereby waived, applying the proceeds to the payment of any one, or more, or all of the said claims and demands, whether then due or not, as the said bank or the holder may deem proper, with the right of the latter to become a purchaser at the sale or sales; also with authority upon the sale or transfer of any of said claims, demands, or indebtedness, to transfer and deliver as security any part or all of said securities.

"If any liability above mentioned be sued upon, the undersigned agrees to pay a reasonable attorney's fee.

"A. J. Nielson."

The date of the foregoing instrument and "28 shares cap stock East Jordan Irrigation Co. Ctf $\left(\frac{shares}{28}\right)$ No. 1132-C" were in the handwriting of Charles S. Burton. A line was drawn through the printed words "State National Bank" and in lieu thereof were written in the handwriting of Charles S. Burton, the words "Savings & Trust Co." The instrument was subscribed by A. J. Nielson on or about the date it bears. Nielson testified that the instrument had been altered without authority from him by drawing a line through the printed words, "State National Bank" and writing the words, "Savings & Trust Co" and also writing in the words "28 shares cap stock East Jordan Irrigation Co. Ctf $\left(\frac{shares}{28}\right)$ No. 1132-C" after he signed the instru-

ment. Charles S. Burton died before the trial. A partnership existed between Charles S. Burton and A. J. Nielson before the death of Burton. So far as appears, however, the certificate of stock involved in this proceeding was not a part of the partnership property.

Prior to and at the time the water stock certificate was received by the substituted defendant, A. J. Nielson was indebted to the substituted defendant in the sum of about $12,000. The indebtedness was evidenced by a promissory note. Charles S. Burton signed the note with Nielson. The note was secured by a mortgage on Nielson's real estate.

F. M. Mickelson, a witness produced on behalf of the substituted defendant, testified in substance that he was the cashier of the Utah Savings & Trust Company; that about two months before the stock certificate was sent to the Utah Savings & Trust Company he wrote a letter to Charles S. Burton, and mailed a copy thereof to A. J. Nielson; that in this letter a demand was made for additional security for the payment of the Nielson note held by the Utah Savings & Trust Company. Mickelson further testified that, after the stock certificate was received by the Utah Savings & Trust Company, he had a number of conversations with A. J. Nielson about the note which Nielson owed the bank; that he informed Nielson that Burton had delivered the water stock certificate to the substituted defendant as additional security for the Nielson note; that he informed Nielson that an assessment was due on the stock represented by the certificate; and that Nielson agreed to pay the assessment. Nielson denied that he had ever had any conversation with Mickelson about the stock certificate, and he further testified that he had not authorized Burton to deliver the certificate to the Utah Savings & Trust Company. Nielson also testified that he did not receive a copy of the letter written to Burton by Mickelson.

It is further made to appear that the Utah Savings & Trust Company foreclosed the real estate mortgage on the Nielson property. After the mortgaged real estate was

sold, there remained a deficiency judgment on the Nielson note in the sum of $2,106.10. In the foreclosure proceedings the substituted defendant inadvertently failed to foreclose its claimed lien on the stock certificate. After the deficiency judgment was entered, the substituted defendant sold to itself the stock certificate here involved and credited the sale price on the deficiency judgment. The substituted defendant claims title to the stock in controversy by reason of this sale.

Under date of January 15, 1924, A. J. Nielson executed and delivered to the plaintiff herein a written assignment in words following:

"Assignment.

"For valuable consideration, I hereby sell, assign, set over and transfer to D. A. Skeen, twenty eight shares of stock of the East Jordan Irrigation Company standing in my name on the books of the company, represented by Certificate No. 1132C, which certificate I am not now able to locate, and hereby authorize the secretary of the Company upon receipt of this assignment to cancel all such shares and reissue the same to D. A. Skeen in accordance with this assignment.

"Dated this 15th day of January, 1924.

"A. J. Nielson.

"Witness: Violet Swenson."

It is by virtue of this written assignment that the plaintiff claims title to the stock involved in this proceeding.

Obviously, if the substituted defendant acquired title to the stock as claimed by it, such title, being first in time, is superior to the claim of plaintiff.

It is upon substantially the foregoing record that the plaintiff contends that the findings of fact, conclusions of law, and judgment are not supported by the evidence. It is plaintiff's contention on this appeal that the evidence does not show that Burton had any authority from Nielson to pledge the stock certificate. Obviously, if the testimony of Nielson is to be believed, Burton had no such authority. There are, however, a number of facts and circumstances which tend strongly to support the claim of the substituted

defendant and which are inconsistent with Nielson's testimony. Thus it appears that Burton was a man of a high standard of business integrity; that he was Nielson's intimate friend and business associate. It further appears that soon after the letter was written to Burton and a copy thereof mailed to Nielson demanding additional security for the payment of the Nielson note, the stock certificate was mailed by Burton to the substituted defendant. The learned trial judge may well have believed that Burton did not alter the instrument pledging the stock certificate and also that Burton did not deliver the certificate to the substituted defendant without authority from Nielson. If the testimony of Mickelson is to be believed, Nielson in effect ratified the delivery of the stock certificate to the substituted defendant.

We are of opinion that the findings of fact, conclusions of law, and judgment are supported by the evidence.

The judgment is affirmed. Respondent is awarded its costs.

CHERRY, C. J., and STRAUP, EPHRAIM HANSON, and FOLLAND, JJ., concur.